IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEGIS MORTGAGE CORPORATION, et al.[1] | ) | Case No. 07-11119 (BLS) |
| | ) | |
| Debtors. | ) | |
| | ) | Adversary Proceeding No. 07-51693 (BLS) |
| MARCIA ROMMEL and LAWONDA WILLIAMS, on their own behalf and on behalf of all other persons similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | |
| AEGIS MORTGAGE CORPORATION, AEGIS WHOLESALE CORPORATION, and CERBERUS CAPITAL MANAGEMENT, L.P., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Objection Deadline: March 13, 2009 at 4:00 p.m. (prevailing Eastern time)
Hearing Date: March 18, 2009 at 2:00 p.m. (prevailing Eastern time)

**JOINT MOTION PURSUANT TO SECTION 105
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 9019 AND 7023
TO (I) APPROVE A SETTLEMENT AGREEMENT PURSUANT TO
BANKRUPTCY RULE 9019, (II) CERTIFY A CLASS CONSISTING
OF TWO SUBCLASSES OF WARN ACT CLAIMANTS FOR
SETTLEMENT PURPOSES ONLY, APPOINT CLASS COUNSEL,
CLASS REPRESENTATIVES, AND PRELIMINARILY APPROVE THE SETTLEMENT
PURSUANT TO BANKRUPTCY RULE 7023, (III) APPROVE
THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE
CLASS CERTIFICATION AND SETTLEMENT, (IV) SCHEDULE A
FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE
SETTLEMENT AGREEMENT, (V) FINALLY APPROVE THE SETTLEMENT**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Aegis Mortgage Corporation (9883); Aegis Wholesale Corporation (9888); Aegis Lending Corporation (9884); Aegis Correspondent Corporation (0359); Aegis Funding Corporation (9886); Aegis Mortgage Loan Servicing Corporation (0515); Solutions Settlement Services of America Corporation (6879); Solutions Title of America Corporation (7045); and Aegis REIT Corporation (3436). The address for all Debtors is 3250 Briarpark, Suite 400, Houston, TX 77042

## AGREEMENT PURSUANT TO BANKRUPTCY RULE 7023 AFTER THE
## FAIRNESS HEARING, AND (VI) GRANT RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors"), Cerberus

Capital Management, L.P. ("Cerberus"), the Official Committee of Unsecured Creditors of the

Debtors (the "Committee") and prospective class representatives, Marcia Rommel and Lawonda

Williams (the "Class Representatives" or "Named Plaintiffs"), on behalf of themselves and similarly

situated prospective class members (together with the Class Representatives, the "Class Members"),

by and through their respective counsel, hereby move (the "Joint Motion") this Court, pursuant to

section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal Rules of Civil

Procedure (the "Civil Rules"), applicable hereto by Bankruptcy Rule 7023, for the entry of an order:

(a) approving the Compromise and Settlement Agreement (the "Settlement Agreement" )[2] among the

Debtors, Cerberus, the Class Representatives, and the Committee,[3] pursuant to Bankruptcy Rule

9019, (b) certifying a Class consisting of two subclasses for settlement purposes, appointing

Lankenau & Miller, LLP and The Gardner Firm, P.C. as class counsel ("Class Counsel"), appointing

Marcia Rommel and Lawonda Williams as the Class Representatives and preliminarily approving

the Settlement Agreement pursuant to Civil Rule 23, (c) approving the form and manner of notice to

Class Members of the conditional class certification and settlement (the "Class Notice"),

(d) scheduling a fairness hearing (the "Fairness Hearing") to consider final approval of the

Settlement Agreement pursuant to Civil Rule 23, and (e) after the Fairness Hearing, finally

---

[2] A true copy of the Settlement Agreement is attached hereto as Exhibit A.

[3] The Debtors, Cerberus, the Class Members, and the Committee are referred to herein collectively as the "Parties."

approving the Settlement Agreement pursuant to Civil Rule 23. In support of the Joint Motion, the

movants respectfully represent as follows:

## **INTRODUCTION**[4]

1.     The Court should approve the Settlement Agreement.  The Class

Representatives have sued Aegis Mortgage Corporation and Aegis Wholesale Corporation (the

"Debtor-Defendants") for allegedly failing to provide notice required by the Worker Adjustment and

Retraining Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act"), before ordering mass layoffs and/or

plant closings.  The Class Representatives have named Cerberus as a defendant based on their

allegation that Cerberus and the Debtor-Defendants were a "single employer" under the provisions

of the WARN Act.  The maximum alleged WARN damages of the Class Members is $5,697,796

plus attorneys fees and costs, if the Class Representatives prevail.  However, the employees of the

Debtor-Defendants that worked at the Debtors' headquarters located in Houston are the only

employees that were employed at a site that employed more than fifty employees.  The maximum

alleged WARN damages for these employees of the Debtor-Defendants employed at the Houston

headquarters is $2,061,765.  The maximum alleged WARN damages for employees of the Debtors

that are not defendants and that worked at sites with less than fifty employees is $3,635,911.

Although the matter is not settled in the Third Circuit, the Debtors and Cerberus contend that

employees at sites with less than fifty employees are not entitled to WARN notice.  Class Counsel

disputes this.  In exchange for a full release for any claim arising from the mass layoffs and/or plant

closings, the Debtors' estates will make a payment to Class Counsel of $1.1 million, to be distributed

---

[4] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in subsequent sections of the
Joint Motion.

by Class Counsel in accordance with the terms of the Settlement Agreement. Of this amount, Cerberus may contribute $200,000 through its affiliate, Madeleine LLC ("Madeleine") subject to the terms and conditions of an amended plan.

2. From the estates' perspective, the Settlement Agreement is fair and reasonable. The above-captioned WARN class action would be protracted and expensive, and the outcome uncertain. The Defendants believe that the fundamentals of the Debtors' business remained sound through the middle of the summer of 2007. However, extraordinary and unforeseeable events in the residential housing and credit markets thrust the Debtors into a completely unanticipated liquidity crisis in a matter of a few days which ultimately required the Debtors to cease all loan origination activity. Therefore, based on the unforeseeable business circumstances exception to the 60 days notice requirement of the WARN Act, Defendants contend that they were excused from providing 60 days notice of the shutdown that occurred in early August 2007.

3. The Debtors and Cerberus assert additional defenses including the faltering company exception and, to the extent that the unforeseeable business circumstances or faltering business exceptions to the WARN Act do not apply, they are entitled to a reduction of any purported damages based on the Defendants' good faith belief that all of their actions complied with the provisions of the WARN Act.

4. Class Counsel contends the subprime mortgage crisis began in the spring of 2007 and that the events that led to the Debtors' failure were foreseeable and that none of the other WARN exceptions are applicable.

5. A trial on the applicability of the unforeseeable business circumstances exception would require both sides to engage in extensive expert and non-expert discovery at significant expense, with inherently uncertain results at trial. The total professional fees on both sides could easily exceed the amount of the Settlement Payment.

6. Class Counsel also contends that if the Court found that the Class Members were entitled to even one additional day of notice than they were provided, then the Class Members would be the prevailing parties entitled to their attorneys' fees and costs. Thus, if the case is tried, the Debtors face, at least a theoretical risk, of being liable for both sides' fees even if they established the unforeseeable business circumstances exception to the sixty days' notice requirement, if the Court finds the Debtors did not provide notice to the Class Members as soon as practicable.

7. In light of these factors, the Debtors have determined that the Settlement Payment of $1.1 million is well within the range of reasonableness and the Committee agrees with this assessment. Accordingly, the Court should approve the Settlement under Bankruptcy Rule 9019.

8. For essentially the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members. In addition, the Settlement Agreement provides an immediate payment to the Class Members. Without the settlement, the Class Members would wait years for any payment on their alleged WARN claims, even if they prevail on trial and appeal.

9. Further, it is appropriate to certify the Class for settlement purposes and appoint Class Counsel. As set forth below, for purposes of the settlement, the Parties agree that the

Class meets all of the requirements of Civil Rule 23 and that Class Counsel is competent and experienced.

10.     Finally, the Parties request a two-step approval process to facilitate notice to Class Members. After preliminary approval of the Settlement Agreement and the form of notice to be given to the Class Members, Class Counsel will provide notice ("Notice") to each Class Member that describes the Settlement Agreement, and informs the Class Members of their right to opt-out of the Class or object to the Settlement Agreement and of the deadlines for opting-out and/or objecting.

11.     After service of the Notice, the Parties request that the Court set a Fairness Hearing at which it will finally approve the Settlement Agreement.

12.     Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## Jurisdiction

13.     This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, Bankruptcy Rule 9019 and Civil Rule 23.

## Background

14.     On August 13, 2007 (the "Petition Date"), the Debtors commenced these cases (the "Bankruptcy Cases") by filing voluntary petitions for relief under the Bankruptcy Code.

15.     The chapter 11 Bankruptcy Cases are jointly administered as *In re Aegis Mortgage Corporation, Inc. et al.*, Case No. 07-11119 (BLS).

16.     The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

17.     No request has been made for the appointment of a trustee or an examiner in these cases. The Office of the United States Trustee appointed the Committee on August 24, 2007.

### The Debtors' Business and Events Leading Up to the WARN Action

18.     Prior to filing for bankruptcy, the Debtors were a full-service residential mortgage company with offices in twenty-four states. As of August 6, 2007, the Debtors employed approximately 1,300 employees. Of these employees, 358 worked at the Debtors' Houston headquarters. The rest of the Debtors' employees worked at one of thirty-three branches located throughout the nation. The Houston headquarters was the only site at which more than fifty employees worked as of August 6, 2007.

19.     In the beginning of 2007, the Debtors began to implement a restructuring plan that included a transition out of its subprime business and reducing costs. In connection with this restructuring plan, the Debtors sought additional financing from Cerberus, and Cerberus approved an additional $85.5 million in financing. From May 30, 2007, through July 20, 2007, Cerberus provided $60 million of financing to the Debtors in the form of unsecured loans (the last $10 million was provided on July 20, 2007, just two weeks prior to the shutdown of the wholesale loan origination business).

20.     The Debtors contend that unanticipated, rapid and extreme increases in cash needs thrust the Debtors into a liquidity crisis in a matter of just days. Moreover, the actual performance of the business at the beginning of August 2007 was far below what was reasonably projected just a few months earlier.

21.     Most significantly, enormous demands were made on the Debtors for capital by their warehouse lenders in the form of margin calls at a pace and at levels far above historical norms. In the first few days of August, 2007, the Debtors experienced an almost ten-fold increase in the dollar amount of margin calls compared to the average daily levels in July. These margin calls were generally due and payable within 24-48 hours. The Debtors inability to satisfy the storm of margin calls resulted in defaults under their financing agreements with their lenders. Upon the defaults by the Debtors, the lenders stopped making loans to the Debtors, which disabled the Debtors from originating loans. For all practical purposes, this was the end of the business.

22.     After receiving the flood of unexpected margin calls in the first few days of August 2007, the Debtors conducted a thorough review of its going-forward capacity to meet these sudden and unanticipated margin calls and confront the rapid evaporation of liquidity in the loan markets, including efforts to obtain capital and manage costs. The Debtors concluded that they had no choice but to cease all mortgage origination activity after the close of business on August 3, 2007. The accelerated demands for huge amounts of capital relative to what the business had previously experienced or projected, as the market for the sale of the loans decreased at an accelerated pace, presented an insurmountable hurdle.

23.     The Debtors contend that as a result of the extreme and unparalleled market changes, and the cessation of the mortgage loan origination business, the Debtors were compelled to terminate a large portion of their employees at the Houston headquarters and its other offices on August 7, 2007, including the Class Representatives.  Also on August 7, 2007, the Debtors contend they emailed and mailed a letter that constituted adequate notice under the WARN Act of any plant closing or mass layoff affecting such persons to the extent the WARN Act was applicable.  The Debtors sought bankruptcy protection by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on August 13, 2007.  The remaining employees at the Houston headquarters and at the Debtors' other sites were subsequently terminated on various dates after the Petition Date

### Initiation of the WARN Act Litigation and Description of Claims

24.     On August 20, 2007, the Class Representatives, on behalf of themselves and on behalf of those similarly situated former employees of the Debtor-Defendants, commenced an adversary proceeding titled, *Marcia Rommel and Lawonda Williams on their own behalf and on behalf of all other persons similarly situated v. Aegis Mortgage Corporation, Aegis Wholesale Corporation, and Cerberus Capital Management, L.P.*, Adversary Proceeding No. 07-51693 (the "WARN Action") by filing a complaint (the "Complaint") against the Debtor-Defendants and Cerberus (the Debtor-Defendants and Cerberus are also referred to herein, collectively, as the "Defendants"), alleging that the employment terminations violated the WARN Act by ordering plant closings and/or mass layoffs on or about August 7, 2007 and thereafter, without providing the sixty (60) days' of advance notice thereof.  The Complaint sought damages in the amount of sixty (60) days' wages and benefits and alleged said damages were entitled to administrative priority.

25.     On October 18, 2007, Cerberus filed its answer to the Complaint denying the material allegations of the Complaint and asserting affirmative defenses. Cerberus also denied that it was liable under the WARN Act as a single employer of the Debtor-Defendants and asserted rights of indemnity against the Debtor-Defendants to the extent it was required to pay damages to the Class Members.

26.     On November 20, 2007, the Debtor-Defendants filed their answers to the Complaint denying certain material allegations of the Complaint and asserting, among other affirmative defenses, (i) the Complaint was barred by the faltering company exception as set forth in 29 U.S.C. § 2102(b)(1); (ii) the Complaint was barred by the unforeseen business circumstances defenses set forth in 29 U.S.C. § 2102(b)(2)(A); (iii) the Debtor-Defendants were not employers as defined under the WARN Act but rather were liquidating fiduciaries, (iv) the Debtor-Defendants reasonably and in good faith believed that their actions complied with the WARN Act and that the terminations were lawful; and (v) the Debtor-Defendants were entitled to offset any voluntary payments made to the Class Members from any damages suffered. The Debtor-Defendants also denied that the WARN Act claims were entitled to administrative priority.

27.     On December 19, 2007, the Class Representatives filed their Motion for Class Certification and Other Relief ("Motion for Class Certification"). The Parties stipulated to extend the time for Defendants to respond to the Motion for Class Certification pending the completion of settlement discussions.

28.     On or about January 28, 2008, the Committee intervened in the WARN Action pursuant to a Court-approved stipulation.

29.     Certain Class Members have filed proofs of claim against the Debtors in the

Bankruptcy Cases for amounts allegedly owed under the WARN Act ("Individual WARN Claims")

but no proof of claim was collectively filed on behalf of the Class Members.

### The Settlement Negotiations

30.     On December 10, 2008, the Parties executed a *Pre-Negotiation Agreement*

with the express intention of engaging in discussion and negotiations regarding the settlement of the

WARN Action and all related claims.

31.     The Debtors have provided documents and other materials relevant to the

WARN claims and defenses to Class Counsel and, with the Committee and Cerberus, have engaged

in a series of settlement negotiations.

### Essential Terms of the Proposed Settlement

32.     In March 2008, the Debtors, Cerberus and Class Counsel reached a tentative

agreement, subject to approval of the Committee and the Court, the terms of which were later refined

and memorialized in the Settlement Agreement. In general, the Settlement Agreement provides for

the payment of $1.1 million in settlement of the claims of the Class Members that the Debtor-

Defendants and Cerberus failed to provide adequate notice under the WARN Act. The settlement

provides for a single payment to be made to Class Counsel to be distributed pursuant to the terms of

the Settlement Agreement and described below. The essential terms of the Settlement Agreement

are as follows:

- A class comprised of two subclasses will be certified for settlement
  purposes only (the "Class"). The Class will include all of the Debtors'
  employees who were terminated on or after August 7, 2007, other than
  employees who are not entitled to participate in the settlement because

(i) they received severance pay from the Debtors that exceeds the maximum amount that they could have recovered under the WARN Act; or (ii) they voluntarily resigned from their employment with the Debtors (collectively, the "Ineligible Employees"). The names of the Class Members are set forth on Exhibits B and C to the Settlement Agreement.

- The first subclass ("Subclass One") includes all employees of the Debtor-Defendants who were employed at the Debtors' Houston headquarters as of August 6, 2007, other than the Ineligible Employees. The Subclass One Class Members are listed on Exhibit B to the Settlement Agreement.

- The second subclass ("Subclass Two") is made up of the employees who worked at the Houston headquarters who were employed by Debtors other than the Debtor-Defendants and employees of the Debtor and/or Debtor-Defendants who worked at sites other than the Houston headquarters, other than the Ineligible Employees. The Subclass Two Class Members are listed on Exhibit C to the Settlement Agreement.

- The Debtors will pay $1.1 million (the "Settlement Payment") to Class Counsel in full and final satisfaction of the released Claims against the Debtors, their estates and Cerberus.[5]

- Upon payment of the Settlement Payment, any claims that have been scheduled on behalf of, or filed by, the Class Members in the Bankruptcy Cases, on account of any alleged violation of the WARN Act or for severance pay or benefits under any federal, state or local law or regulation, including, without limitation, the proofs of claims filed by certain Class Members will be disallowed in their entirety and

---

[5] Claims are defined as the claims of each Class Member that relate to or are based on the WARN Act or severance pay or benefits arising out of the termination of the employment of the Class or the Class Members by the Debtors, including, but not limited to: (i) all claims asserted or that could have been asserted in the Individual WARN Claims, and the WARN Action; and (ii) any other claims for severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation; provided, however, that the following claims and/or rights of the Class or Class Members shall not be released: (a) any claims for continuation of health or medical coverage, at the Class Members expense, or at the expense of a beneficiary or dependant of a Class Member, to the extent required by the relevant provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); (b) any prepetition claims for expense reimbursement; (c) any prepetition claims arising out of obligations of the Debtors unrelated to the WARN Act Litigation, the WARN Act, or severance pay or benefits; (d) rights if any, unrelated to the Class Members WARN claims, under the Debtors' 401(k) plans; and (e) any claims which the law clearly states may not be released by settlement.

expunged from the Debtors' schedules or claims register, as appropriate.

- Subject to confirmation of an amended plan on consensual terms presently being negotiated, Madeleine LLC, ("Madeleine") an affiliate of Cerberus through which Cerberus funded the Debtors, and which has filed proofs of claim in the Bankruptcy Cases totaling in excess of $170,000,000 plus interest costs and expenses, will contribute $200,000 of amounts it would otherwise receive as distributions on its claims, to unsecured creditors of the Debtors.

- Before any distribution to the Class Members, Class Counsel will make the following payments from the Settlement Payment:

- $2,500 will be paid to both Class Representatives (the "Service Payment") as payment for the services they provided to the Class in connection with the prosecution of the WARN Action; and

- Thirty percent of the amount remaining after deduction of the Service Payments will be paid to Class Counsel (the "Class Counsel Fees").

- After payment of the Service Payment and the Class Counsel Fees, Class Counsel will retain for distribution to Class Members the net amount of $766,500 (the "Common Fund").

- The Common Fund will be distributed to the Class Members, as follows:

- $628,550 to the Subclass One Class Members, representing approximately 82% of the Common Fund. The amounts to be paid to each Subclass One Class Members are derived by allocating the $628,550 pro rata to each Subclass Class Member based on the maximum theoretical amount of their WARN claim. The amounts to be distributed to each Subclass One Class Member is shown on Exhibit B to the Settlement Agreement.[6]

---

[6] In calculating the maximum theoretical amount of the WARN claims, the daily rate of individual Class Members was determined by dividing each salaried employee's annual wages by 365 and by dividing each hourly employee's year to date wages by the number of calendar days in 2007 up to and including the last day the employee worked. The number of days in the purported violation period was determined by subtracting the number of days of actual notice received by each Class Member from 60. Each Class Member's maximum theoretical WARN claim was determined by multiplying each Class Member's daily rate by the number of days in the violation period and subtracting from that amount the voluntary severance payments made by the Debtors to each Class Member.

- $137,950 to Subclass Two Class Members, representing approximately 18% of the Common Fund. This amount is reflective of the weakness of the Small Facility Employees' WARN Act claims. The amounts to be paid to each Subclass Two Claimant are derived by dividing $137,950 by the number of Subclass Two Class Members. Therefore each Subclass Two Class Member will receive an equal amount. As shown on Exhibit C to the Settlement Agreement, each Subclass Two Class Member will receive a net payment of $172.87.

- In the event any Class Members opt-out of the Settlement Agreement, the Settlement Payment shall be reduced by such opting-out Class Member's share of the Common Fund as shown on Exhibits B and C to the Settlement Agreement.

- Issuance of Class Notice: Class Counsel shall send by first class mail to each Class Member's last known address, a notice (the "Notice") indicating:

    - that each Class Member has the right to opt-out of the Class and preserve all of his/her rights against the Debtors and Cerberus, if any, including the released Claims;

    - the last date such Class Member was paid, the office location to which the Class Member was assigned as of the date of his/her termination, and the Class Member's annual or year to date income on the date of termination, depending on whether the Class Member was salaried or hourly;

    - that the Settlement Agreement shall become effective only if it is finally approved by the Court;

    - that upon Court approval of the Settlement Agreement, it shall be effective as to all Class Members that do not opt-out of the Class; however, if more than fifty of the Class Members timely opt-out of the Settlement Agreement, then either the Debtors or Cerberus may, upon consultation with the Committee, elect to terminate the Settlement Agreement and it shall not become effective;

    - that all released Claims (as defined in section 16 of the Settlement Agreement) of a Class Member shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon;

- the dollar amount such Class Member would receive under the Settlement Agreement, before deducting attorneys' fees, as well as an estimate of such net payment after Class Counsel Fees have been deducted; and

- that such Class Member has the right to object to the Settlement Agreement, to retain counsel and be heard at the Fairness Hearing.

- Cerberus will release the Debtors and the Debtors' estates from any claims it may have for indemnity and/or contribution arising out of the claims alleged against it in the WARN Action.

**Relief Requested**

33.     By this Joint Motion, the Parties request that the Court enter orders: (i) authorizing the Parties to enter into the Settlement Agreement; (ii) certifying the Class for settlement purposes only, appointing Class Counsel and Class Representatives and preliminarily approving the Settlement Agreement; (iii) Approving the form and manner of the Class Notice; (iv) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; and (v) approving the Settlement Agreement on a final basis.

**Basis for Relief Requested**

**A.     The Court Should Approve the Settlement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure**

34.     The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)); *see also, In re Culmtech, Ltd.,* 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and … much of litigation in bankruptcy estates results in settlements"). Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a

compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a), and section 105 of

the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate." 11

U.S.C. § 105(a).

35.     "[T]he authority to approve a compromise settlement is within the sound

discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del

2005); *see also, In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997). When exercising such

discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in

the best interest [sic] of the estate." *Key3Media, ,* 336 B.R. 87, 92; *see also Fry's Metals, Inc. v.

Gibbons (In re RFE Industries, Inc.*), 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211

B.R. at 801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr D. Del. 1998).

36.     The bankruptcy court is not required to determine that the proposed settlement

is the best possible compromise. *In re Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram

Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be

approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v.

Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.) (1983). In this respect, it is unnecessary

for the court to consider the information necessary to resolve the factual dispute, nor is necessary for

the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media

Group*, 336 B.R. at 92 (quoting *In re Martin*, 212 B.R. 316, 319 (BAP 8th Cir. B.A.P. 1997)).

### Standards for Approval of the Settlement Agreement

37.     "Courts consider the following four factors when determining whether a

settlement is in the best interests of the estate: (i) the probability of success in the litigation; (ii) the

difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the paramount interest of the creditors and a proper deference to their reasonable opinions. *Martin, 91 F.3d at 393; Aetna Casualty & Surety v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 123 (Bankr. D.N.J. 1999); *Key3Media Group*, 336 B.R. at 93; *Marvel*, 222 B.R. at 249.

38.      In addition to these criteria, courts have also scrutinized additional factors, such as (i) the competency and experience of counsel who support the settlement; (ii) the relative benefits to be received by individuals or groups within the class; (iii) the nature and breadth of releases to be obtained by the parties to the settlement; and (iv) the extent to which the settlement is the product of arm's length bargaining. *See Fischer v. Pereira (In re 47-49 Charles Street, Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re Dow Corning Corp.*, 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

## Application of the Martin Factors[7]

39.      The results of a trial are uncertain and the litigation is complex. The WARN Action involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*, (i) whether the Debtor-Defendants' WARN Notice provided adequate notice to the Class Members under the WARN Act (Class Counsel alleges that only after-the-fact notice was provided and contends such notice is inadequate); (ii) whether the Debtor-Defendants were entitled to give fewer than sixty days notice

---

[7] This section discusses both the first and third Martin factors – uncertainty of success and complexity of litigation – because in this case these issues are intertwined. The second factor – difficulty with collection – does not apply because the Debtors are the defendants.

because of the unforeseeable business circumstances that caused the Debtors to fail; (iii) whether the Debtor-Defendants were entitled to give fewer than sixty days notice because, at the time notice would otherwise have been required, they were seeking new capital they reasonably believed, if obtained, would have obviated or substantially postponed the alleged plant closing or mass layoffs; (iv) whether the Defendants have other defenses to the application of the WARN Act; (v) whether the employment losses allegedly suffered by the aggrieved employees were caused by the Debtor-Defendants' failure to obtain capital or business; (vi) whether the Debtor-Defendants gave "as much notice as practicable"; (vii) whether the Defendants are entitled to a defense of "good faith;" (viii) the computation of the amount of damages; (ix) whether the Defendants are entitled to setoffs against damages for sums paid prepetition and postpetition to employees; (x) whether employees of the Debtor-Defendants employed at sites with less than fifty employees are entitled to WARN damages;[8] (xi) whether attorneys' fees are to be awarded to the Class Members if they prevail and whether such fees are entitled to administrative priority; (xii) whether the alleged damages are entitled to administrative priority under section 503(b)(1)(A) or wage or benefit priority under section 507(a)(4) or (5), respectively;[9] and (xiii) whether Cerberus and the Debtor-Defendants

---

[8] Several cases have held that single sites of employment with less than fifty employees are not protected under the WARN Act. *In re APA Transport Corp,* 2006 WL 3534029 (D.N.J Dec. 7, 2006); *Jamesway Corp. v. Bailey, (In re Jamesway Corp.),* 1997 WL 327105 (Bankr. S.D.N.Y, June 12, 1997); *Williams v. Phillips Petroleum Co.,* 23 F. 3d 930, 932-34(5th Cir. 1994). *But cf., Kirkvold v. Dakota Pork Industries, Inc.,* CIV 97-4166 D.S.D. Dec. 15, 1997 (unreported decision holding that employees of a "small" facility closed as the foreseeable consequence of the closure of a "large" facility were protected by the WARN Act, citing 29 U.S.C. §2101 (a)(5)). Class Counsel contends the statute is ambiguous on this issue and there is no binding authority in the Third Circuit. Pursuant to D.Del.LR 7.1.3(a)(7), a copy of this decision is attached hereto as Exhibit B.

[9] The Delaware Bankruptcy Court has recently held that WARN damages resulting from pre-petition employment terminations are not entitled to administrative priority, but rather are treated as priority wage claims up to the cap of $10,950 and general unsecured claims thereafter. *Henderson v. Powermate Holding Corp.* (In re Powermate Holding Corp.), 394 B.R. 765 (Bankr. D. Del. 2008). That decision has been appealed and there is no Circuit authority on the issue.

constitute a "single employer" under the provisions of the WARN Act such that Cerberus is liable

for some or all or the alleged damages.

40.     Continued litigation would be costly and time-consuming and expose the

Debtors' estates to significant litigation risks. Class Counsel has asserted that the Debtors' WARN

Act liability of sixty (60) days' damages and benefits is approximately $5,700,000, which constitutes

an alleged administrative expense. The settlement provides for the creation of a $1.1 million

settlement fund which resolves those claims and eliminates any further accrual of the substantial

litigation expenses which have been associated with the WARN Action. Accordingly, the Parties

respectfully submit that approval of the Settlement is warranted.[10]

41.     The Settlement is in the best interest of creditors and the estates. When

determining whether a compromise is in the best interests of the estate, the Court must 'assess and

balance the value of the claim that is being compromised against the value to the estate of the

acceptance of the compromise proposal.'" *In re Key3Media Group*, 336 B.R. at 93 (quoting *In re

Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))); *see

also In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n

deciding whether to approve a particular compromise, courts utilize various criteria designed to

achieve the objective of having the Trustee or debtor in possession act in [the] best interests of the

estate"). To properly balance these values, the Court should consider all factors "relevant to a full

and fair assessment of the wisdom of the proposed compromise." *In re Marvel*, 222 B.R. at 249

(quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424); *see also Key3Media Group*, 336 B.R. at 92

---

[10] In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

("[t]he bankruptcy court must be "apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.") (quoting *In re Martin*, 91 F.3d at 393).

42.     The paramount interest of creditors and reasonable deference to their views also favors approval of the Settlement Agreement. The Committee was involved in the negotiation of the Settlement Agreement and supports its approval. Moreover, as set forth above, the Settlement Agreement spares the Debtors the significant expense and uncertainty associated with the litigation of the myriad of issues in the WARN Action.

43.     Furthermore, in its answer, Cerberus alleged a right to indemnity from the Debtors if it were found liable. The Settlement Agreement avoids this risk by providing that Cerberus releases the Debtors and the Debtors' estates from any liability for contribution and/or indemnity arising from the WARN Action.

44.     Accordingly, in light of each of the Martin factors, the Settlement Agreement should be approved.

**B.      The Court Should Certify the Class, Appoint Class Counsel, and Preliminarily Approve the Settlement Agreement Pursuant to Rule 23 of the Federal Rules of Civil Procedure[11]**

45.     Where, as in this case, the Court has not already certified a class, before approving a class settlement pursuant to Civil Rule 23, the Court must determine whether the proposed settlement class satisfies the certification requirements of Civil Rule 23. *Amchem v.*

---

[11] The positions taken in this section of the Joint Motion are those of Class Counsel only. The Debtors, Cerberus and the Committee take no position on these matters other than to support approval of the Settlement Agreement and class certifications for purposes of settlement only. In the event the Settlement Agreement does not become effective, the Debtors and the Committee reserve all of their rights to contest class certification.

*Windsor,* 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia,* 418 F.3d 277, 300 (3rd Cir. 2005).

46.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem,* 521 U.S. at 618. *Accord Community Bank,* 418 F.3d at 299. "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *Community Bank,* 418 F.3d at 299. *See also, General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart.").

47.     Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem,* 521 U.S. at 621.

## The Court Should Conditionally Certify the Settlement Class

48.     To be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23; *Community Bank,* 418 F.3d at 302. In addition, the class must satisfy the requirements of Rule 23(b)(1), (2), or (3). In this case, the Parties have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.* In order to certify a class under Rule 23(b)(3), the court must make two additional findings: predominance and superiority. That is, "[i]ssues common to the class must predominate over individual issues, and the class action device

must be superior to other means of handling the litigation." *Gates v. Rohm & Hass Co.,* 248 F.R.D.

434, 442-43 (E.D. Pa 2008). The proposed settlement Class meets each of the foregoing elements.

## The Rule 23(a) Criteria

49.     Numerosity requires a finding that the putative class is "so numerous that

joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*

259 F.3d 154, 182 (3d Cir. 2001). "No single magic number exists satisfying the numerosity

requirement." *Beherend v. Comcast Corp.,* 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v.*

*Loop, 128 F.R.D. 624, 628 (E.D.Pa. 1989).* However, the Third Circuit "typically has approved

classes numbering 40 or more." *Gates,* 248 F.R.D. at 440 (*citing Stewart v. Abraham,* 275 F.3d 220,

226-27 (3d Cir. 2001)).

50.     The proposed class of 1,142 Class Members meets the numerosity

requirement and joinder of all Class Members is impractical. Subclass One is made up of 344

individuals. Subclass Two is made up of 798 individuals. These subclasses are sufficiently

numerous to make joinder of all members impractical, and thus satisfy the numerosity requirement.

*See Gates,* 248 F.R.D. at 440 (finding that two classes made up of 400 and 1,000, respectively,

satisfied the numerosity requirement). Accordingly, the Court should find that the numerosity

requirement is met.

51.     The commonality requirement requires existence of at least one question of

law or fact common to the Class. Fed. R. Civ. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.,*

265 F.3d 178, 184 (3d Cir. 2001). The commonality threshold is low, *Powers v. Lycoming Engines,*

245 F.R.D. 226, 236 (E.D. Pa. 2007), and does not require "an identity of claims or facts among

class members," *Behrend,* 245 F.R.D. at 202. Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory.

52.     Here, fundamental issues of law and fact regarding notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Class Members.[12]

53.     As discussed above, some Class Members were employed by the Debtor-Defendants and some were employed by nonDebtor-Defendants. Also, some of the Debtor-Defendants' employees were employed at the Houston headquarters which employed more than fifty people and some were employed at the branches which all employed less than fifty people. To reflect the fact that the employees of the nonDebtor-Defendants and the Debtor-Defendants' employees that worked at sites with less than fifty employees have weaker claims that the employees of the Debtor-Defendants that worked at the Houston headquarters, they will receive smaller settlement payments as members of Subclass Two. The differences in the strength of the claims does not destroy commonality. In cases where the claims or defenses differ between class members, a court may use subclasses to treat individual issues separately. *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir. 1985). Accordingly, as part of the Settlement Agreement, two subclasses have been created.

---

[12] Class Counsel recognizes that the amount of damages is particular to each Class Member. However, individualized damages calculations do not defeat commonality, "so long as the plaintiffs allege harm under the same legal theory." *Baby Neal v. Casey,* 43 F.3d 48, 56-58 (3d Cir. 1994).

54.     Typicality requires that the "named plaintiffs" claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." Fed. R. Civ. P. 23(a)(3); *Beck v. Maximus, Inc.,* 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting *Baby Neal,* 43 F.3d at 55). "Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class." *Powers,* 245 F.R.D. at 236. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck,* 457 F.3d at 295-296 (quoting *Baby Neal*, 43 F.3d at 55).

55.     The Class Representatives do not allege that they were singled out; instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the absentee Class Members–they were laid off by the Debtors on or after August 7, 2007, without receiving sixty (60) days' notice. Accordingly, the Court should find that the typicality requirement is met.

56.     With respect to adequacy, class representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Gates,* 248 F.R.D at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston,* 265 F.3d at 185.

57.     The Court should find that the Class Representatives and Class Counsel

adequately represent the interests of the Class Members. As demonstrated in the Motion for Class

Certification and the supporting exhibits filed earlier in this matter, Class Counsel are well qualified

and experienced to represent the Class Members. Collectively, they have been appointed as class

counsel in over forty WARN actions and have prosecuted more than one hundred thirty such claims,

most of which were in bankruptcy cases.

## The Rule 23(b)(3) Criteria

58.     Common questions of law and fact predominate over the individual issues

(which appear to be limited to each Class Members' pay and benefits under the WARN Act).

Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by

representation. *Amchem,* 521 U.S. at 623-24; *Community Bank,* 418 F.3d at 308-09. The proper

predominance inquiry "trains on the legal or factual questions that qualify each member's case as a

genuine controversy, questions that preexist any settlement." *Amchem,* 521 U.S. at 623. "In this

vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses

of the named representatives must be typical of the claims of defenses of the classes." *Community*

*Bank,* 418 F.3d at 309.

59.     Just as typicality exists, predominance also exists. All of the claims arise

from an alleged violation of the WARN Act resulting from the Debtors' shut down on or after

August 7, 2007. Accordingly, the Court should find that the predominance requirement is met.

60.     Rule 23(b)(3) also requires a determination that "a class action is superior to

other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P.

23(b)(3); *Gates*, 248 F.R.D. at 443. In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." (*Krell v. Prudential Inc. Co. (In re Prudential Inc. Co).*, 148 F.3d at 283, 316, 3d Cir. 1998).

61.     Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular form; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *Gates,* 248 F.R.D. at 443. However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443.

62.     Here, a class action is superior to individual actions. First, as shown by Exhibits B and C to the Settlement Agreement, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of separate actions. *See Amchem,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quotation and citation omitted). No WARN Act litigation relating to the Debtors is pending against the Defendants outside of this Court. Further, it is appropriate that all the claims

against the Debtors arising from the Class Representatives' allegations should be concentrated in this Court. In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members. Accordingly, the Court should find that the superiority element is met.

63. Based on the foregoing, the Court should certify the Class for settlement purposes, appoint Marcia Rommel and Lawonda Williams as the Class Representatives and appoint Lankenau & Miller, LLP and The Gardner Firm, P.C. as Class Counsel.

## C. The Court Should Preliminarily Approve the Settlement

64. After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates,* 248 F.R.D. 434. Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members. Because the Settlement Agreement in this case will be preliminarily approved pursuant to this Joint Motion, notice of the conditional class certification and proposed settlement can be combined in one notice. *Gates,* 248 F.R.D. at 445; *Collier v. Montgomery County Housing Authority,* 192 F.R.D. 176, 186 (E.D. Pa. 2000) (citing MANUAL FOR COMPLEX LITIGATION § 30.212, at 226). At the subsequent fairness hearing, class members may formally object to the proposed settlement. *Gates,* 248 F.R.D. at 439.

65. "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Id.,* at 438 (*quoting from Smith v. Professional Billing & Management Services, Inc.,* 2007 WL 4191749, at *1 (D. N.J. Nov. 21, 2007)). *See also, In re Community Bank*

*of Northern Virginia,* 2008 WL 3833271 (D.C. W.D. Pa. Aug. 15, 2008) (conditionally certifying class and preliminarily approving settlement before holding final hearing). The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp.,* 55 F.3d 768 at 785-86 (3d Cir. 1995); *Gates,* 248 F.R.D. at 444. When class certification is sought in conjunction with preliminary approval, then class member objections are not relevant. *Gates,* 248 F. R. D. at 444.

66.     The Settlement Agreement has no obvious deficiencies and falls well within the range of reason. Further, each of the above-cited factors favors preliminary approval of the Settlement Agreement. First, the Settlement is the result of good faith arm's length negotiations between capable adversaries. The primary negotiating parties have been in discussions with respect to the WARN action since it was filed over two years ago. As noted above, the Class is represented by counsel with extensive experience and expertise in WARN Act matters.

67.     Second, although the Parties did not engage in formal discovery, the Parties exchanged a significant amount of information during their negotiations. In particular, the Defendants provided extensive information to Class Counsel regarding facts and documents supporting their defenses and the unforeseen business circumstances that lead to the shut-down. These facts included the sudden melt-down of the subprime mortgage industry and the sudden and unilateral decision of the Debtors' lenders to withdraw capital which disabled the Debtors from

originating mortgages. The Debtors have also shared payroll information and the WARN damages analysis with Class Counsel.

68.     Class Counsel have the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate. They exercised that judgment in this case with respect to the Settlement Agreement. In addition and as noted above, proposed Class Counsel have been appointed Class Counsel in over 40 WARN Act cases and have prosecuted more than 130 such claims.

69.     Accordingly, the Court should preliminarily approve the Settlement Agreement.

**D.      The Court Should Approve the Form and**
**Manner of the Proposed Notice of the Settlement.**

70.     Rule 23(c)(2)(B) provides:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude form the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and, (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)B).

71.     In addition, Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. FED. R. CIV. P. 23(e). The Rule 23(e) requirement is "designed to summarize the litigation and the settlement and to apprise class members of the right and

opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 326-27.

72.     The proposed Class Notice and Opt-Out Notice Form, which are attached as Exhibits D and E to the Settlement Agreement, will be served by Class Counsel upon each Class Member. Class Counsel proposes that within **ten business** days following entry of the order certifying the Class for settlement purposes and preliminarily approving the Settlement Agreement, Class Counsel will serve the Notice and Opt-Out Notice Form substantially in the form attached to the Settlement Agreement, upon each Class Member at the last known address of each Class Member according to the Debtors' books and records. *Cf. Prudential*, 148 F.3d at 327 (holding that mailings to last known addresses of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).

73.     The Class Notice includes each of the facts required by Rule 23(c)(2)(B). The Class Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees proposed to be paid to Class Counsel and describes how each Class Member may obtain a copy of the pleadings in the WARN Action and a copy of the Settlement Agreement. The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs each Class Members of their right to appear at the Fairness Hearing, and describes the procedure for objecting to the Settlement Agreement. Finally, the Class Notice will contain a personalized attachment for each Class Member setting forth the projected dollar amount such Class Member would receive under the Settlement Agreement, before and after deduction of Class Counsel Fees. Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

## E.    The Court Should Finally Approve the Settlement at the Fairness Hearing.

74.    The Court should set a Fairness Hearing that, subject to the Court's calendar, would be heard seventy days from the date of service of the Class Notice. At the Fairness Hearing, the Court should finally approve the Settlement Agreement.

75.    Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." *Id.* Final approval of a settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *Community Bank,* 2008 WL 3833271 at * 5 (*quoting General Motors*, 55 F.3d at 785.).

76.    The Third Circuit has held that the following nine factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). This list is not exhaustive. *Community Bank*, 2008 WL 3833272 at * 6.

77.     The following *Girsh* factors strongly support approval of the Settlement

Agreement.

- Litigation will be complicated, protected and expensive.

- The Class Representatives support the Settlement Agreement and Class Counsel believe that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will neither object to it nor opt out of it.

- The Settlement Agreement was reached after the essential facts had been thoroughly investigated by Class Counsel through extensive disclosures by Defendants' counsel.

- The risk that the Class Representatives would be unable to establish liability was high because of the numerous defenses asserted by the Defendants.

- When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness. The settlement provides for payment of $1.1 million, representing approximately 20% of the maximum theoretical damages of the Class. *See Community Bank*, 2008 WL 3833271 (finding that in light of the attendant risk a settlement representing 12.6% of the prayer was reasonable). Further, while the Complaint alleges that any damages are entitled to administrative priority, Class Counsel acknowledges that the Court has recently held that WARN damages arising from prepetition terminations are only entitled to priority wage status. *Powermate*, 2008 WL 4595199.

78.     Based on the foregoing, the Court should finally approve the Settlement

Agreement under Rule 23 of the Federal Rules of Civil Procedure.

## **CONCLUSION**

WHEREFORE, the Parties respectfully request the Court to enter Orders: (i) granting

the Motion in its entirety; (ii) authorizing the Parties to enter into the Settlement Agreement; (iii)

certifying the Class for settlement purposes only; (iv) appointing Class Counsel and Class

Representatives and preliminarily approving the Settlement Agreement; (vi) approving the form and manner notice of the Class Notice; (vii) scheduling a Fairness Hearing; (viii) approving the Settlement Agreement on a final basis; and (ix) granting such other relief as the Court deems necessary and appropriate.

Dated: February 26, 2009

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Kenneth H. Brown (CA Bar No. 100396)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
kbrown@pszjlaw.com
joneill@pszjlaw.com
kmakowski@pszjlaw.com

Counsel for the Debtors

LANKENAU & MILLER

*/s/ Stuart J. Miller*
Stuart J. Miller (SJM4276)
132 Nassau Street, Suite 423
New York, New York 10038
Telephone: (212) 581-5005
Facsimile: (212) 581-2122
Email: sjm@lankmill.com

Counsel for Class Members

THE GARDNER FIRM, P.C.

*/s/ Mary E. Olsen*
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
J. Cecil Gardner (GARDJ3461)
1119 Government Street
Mobile, AL 36604
Telephone: (251) 433-8100
Facsimile: (251) 433-8181
Email: molsen@thegardnerfirm.com
        vmccrary@thegardnerfirm.com
        cgardner@thegardnerfirm.com

Counsel for Class Members

LANDIS RATH & COBB LLP

*/s/ Richard s. Cobb*
Richard S. Cobb (Bar No. 3157)
919 Market Street, Suite 600
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: cobb@lrclaw.com

and

HAHN & HESSEN LLP

*/s/ Rosanne T. Matzat*
Rosanne T. Matzat (NY Bar No. RM-6937)
Mark T. Power (NY Bar No. MP-1607)
Jeffrey Zawadzki (NY Bar No. JZ-1656)
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400
Email: rmatzat@hahnhessen.com
        mpower@hahnhessen.com
        jzawadzki@hahnhessen.com

Counsel for the Committee

LOWENSTEIN SANDLER PC

*/s/ David M. Wissert*
David M. Wissert
65 Livingston Avenue
Roseland, NJ 07068
Telephone: (973) 597-2560
Facsimile: (973) 597-2561
Email: dwissert@lowenstein.com

            and

MESSANA ROSNER & STERN, LLP

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE 3995)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 777-1111
Email: FRosner@mrs-law.com
Counsel for Defendant
Cerberus Capital Management, L.P.