# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

*******************************************************************

LORA KIRKVOLD, ROGER BARNES,
LARRY ERNSTER, and JOAN
ALSTEEN,

    Plaintiffs,

-vs-

DAKOTA PORK INDUSTRIES, INC.,
DAKOTA COLD STORAGE COMPANY,
D.C.S. TRUCK SERVICE, and
AMERICAN FOODS GROUP, INC.,

    Defendants.

CIV 97-4166

MEMORANDUM OPINION
AND ORDER

*******************************************************************

  Plaintiff Lora Kirkvold moves for leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a). She also moves pursuant to Federal Rule of Civil Procedure 23(c) to maintain a class action and for certification of a class and two subclasses. Defendants Dakota Pork Industries, Inc., and American Foods Group, Inc., resist the motions. For the reasons stated below, the Court grants plaintiff's motions.

  Shortly after closure of the Dakota Pork Plant in Huron, South Dakota, on August 1, 1997, plaintiff filed her original complaint alleging in Count One that defendants Dakota Pork Industries, Inc., and American Foods Group, Inc., violated the Workers Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101-2109, by failing to provide employees with sixty days written notice prior to the plant closing. She now seeks leave to amend her complaint to add Count Two, a breach of contract claim, based upon the "Emergency Notices" provision included in the Dakota Pork Employee Handbook. She also seeks leave to amend her complaint to add Count

Three, a claim that the defendants breached an obligation to pay wages pursuant to S.D. Codified Laws Ann. § 60-11-7 (1993).

The "Emergency Notices" provision of the Dakota Pork Employee Handbook states:

> The Company certainly hopes that the day never comes when due to unfortunate circumstances the plant would close or there would be a mass layoff. Keeping in mind we hope the day never comes, you should be aware that you are given substantial protection by the federal law with regard to unannounced plant closings or mass layoffs. Essentially, affected employees are entitled to at least sixty (60) days notice of a plant closing or mass layoff. This law was enacted for your protection. You can rest assured that although Dakota Pork Industries, Inc. hopes that the need for such a notice is never required, the Company will certainly follow this notice law.

Plaintiff alleges that, by adopting this statement and placing it in the Dakota Pork Employees Handbook, defendants "indicated and offered their agreement to provide Dakota Pork employees sixty days notice of a plant closing, without exception." (Doc. 13, Tab A, Proposed Amended Complaint, ¶ 21.) Plaintiff further alleges that Dakota Pork employees accepted this offer by continuing their employment in response to the offer, thus creating a contract requiring defendants to provide Dakota Pork employees with sixty days notice of a plant closing. (Id., ¶ 22.) Plaintiff alleges defendants breached the contract by failing to give sixty days notice, and plaintiffs are entitled to recover all reasonable damages as a result of the breach. (Id. at ¶ 23-24.)

Defendants argue it would be futile for the Court to allow plaintiff to add Count Two because their agreement in the Dakota Pork Employees Handbook to follow their federal statutory obligations under the WARN Act, even if such an agreement existed, is not a binding promise as a matter of law for it is unsupported by consideration. See e.g., Garrett v. BankWest, Inc., 459 N.W.2d

833, 840-41 (S.D. 1990) ("The reduction of debt that Garrett owed BankWest cannot be labeled consideration since Garrett was already under a legal duty to pay BankWest what was owed to it. Payment of an existing obligation, which confers no additional benefits to the promisor or detriment to the promisee, is not good consideration.").

The Court concludes that Count Two is legally sufficient on its face and therefore, amendment of the complaint would not be futile. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 225 (8th Cir. 1994). Count Two alleges that defendants, through placement of the "Emergency Notices" provision in the Dakota Pork Employee Handbook, promised that they would follow the WARN Act notice requirement regardless of whether defendants could invoke any of the exceptions available to them under the WARN Act. Thus, the proposed amended complaint alleges that defendants promised to do more than is required by the WARN Act, and such promise to do more is supported by adequate consideration. See S.D. Codified Laws Ann. § 53-6-1 (1990). The Court will allow plaintiff to amend her complaint to add Count Two. Whether Count Two will withstand a motion for summary judgment is a question for a later day.

Defendants argue it would be futile to allow plaintiff to amend her complaint to add Count Three for breach of an obligation to pay wages under § 60-11-7, potentially subjecting defendants to double damages if plaintiff proves defendants acted out of oppression, fraud or malice, because this lawsuit concerns a breach of an obligation to provide notice, and not to pay wages. Defendants rely upon Aaron v. Brown Group, Inc., 80 F.3d 1220 (8th Cir. 1996), for the proposition that a WARN Act claim is analogous to a contract claim and is unlike a wage claim under state law.

The Court agrees with defendants that, for purposes of determining which state statute of limitations applied to the WARN Act claim brought in Aaron, the Eighth Circuit characterized the

3

WARN Act's primary purpose as notification to employees and refused to analogize the WARN Act to the Missouri wage and hour statutes because that would have subjected the plaintiff-employees to a one-year limitations period. Id. at 1224-25. The appeals court agreed with defendant Brown Shoe that the provisions of the state wage law resembled some of the WARN Act requirements, but concluded, under Missouri law, that a WARN Act claim is more similar to a breach of contract claim, giving the plaintiffs the benefit of a five-year statute of limitations. Id. at 1225. See also Northstar Steel Co. v. Thomas, 115 S.Ct. 1927, 1931 (1995) (observing that none of four Pennsylvania statutes of limitations potentially applicable to WARN Act claim, including three-year period for claims under state wage payment and collection law, would be at odds with WARN's purpose or operation). The Court agrees with plaintiff that the WARN Act has purposes other than notice--employees are entitled to continued employment and payment of wages during the sixty-day period after notice is given, and defendants' failure to pay wages that would have been earned if the WARN Act notice obligation had been met justifies amendment of the complaint to allege a claim under § 60-11-7. See Nelson v. Web Water Dev. Ass'n, Inc., 507 N.W.2d 691, 700-01 (S.D. 1993).

Defendants also argue that amendment of the complaint to add Count Three is futile because the WARN Act is plaintiff's exclusive remedy. Defendants misread the statutes. While 29 U.S.C. § 2104(b) declares that the remedies listed in that section "shall be the exclusive remedies" for recovery under the WARN Act itself, all other contractual or statutory remedies available to plaintiffs are preserved by 29 U.S.C. § 2105, which provides:

> The rights and remedies provided to employees by this chapter are in addition to, and not in lieu of, any other contractual or statutory rights and remedies of the employees, and are not intended to alter or affect such rights and remedies, except that the period of notification required by this chapter shall run concurrently with any period of notification required by

4

contract or by any other statute.

Thus, the two statutes are easily harmonized. Plaintiff is limited to certain remedies by statute if she proves a WARN Act violation, but success under the WARN Act does not preclude her from seeking other remedies available under applicable laws or contracts. Defendants' argument is without merit. The Court allows plaintiff to amend the complaint to add Count Three.

Finally, plaintiff moves to amend her complaint and to certify a class that includes as plaintiffs all former employees of Dakota Pork Industries, Inc., as well as other former American Foods Group employees who were affected by the closing of the Dakota Pork plant through loss of their employment at other American Foods divisions: Roger Barnes, to represent the nine Dakota Cold Storage Company employees of Huron, South Dakota, terminated without notice on August 1, 1997; Larry Ernster, to represent the twelve D.C.S. Truck Service employees of Huron, South Dakota, terminated without notice on August 1, 1997; and Joan Alsteen, to represent more than thirty employees of American Foods Group headquarters located in Green Bay, Wisconsin, who provided clerical, sales, and customer services, terminated without notice on August 13, 1997. Plaintiff also proposes to name as defendants Dakota Cold Storage and D.C.S. Truck Service.

Dakota Cold Storage Company and D.C.S. Truck Service are geographically located three miles and two miles, respectively, from the Dakota Pork plant in Huron. Dakota Cold Storage Company is a service operation providing cold storage for meat produced at the Dakota Pork plant, as well as for grain and other products produced at other plants. D.C.S. Truck Service is a subsidiary of America's Service Line, a division of American Foods, which provides transportation and trucking repair services for all American Foods Group entities. Plaintiff does not dispute that the Dakota Pork plant did not share, transfer, or interchange equipment

or personnel with Dakota Cold Storage, D.C.S. Truck Service, or American Foods headquarters.

Plaintiff seeks to certify a Count Two subclass consisting of all former Dakota Pork Industries, Inc., employees who did not receive sixty days notice based upon the "Emergency Notices" provision of the Dakota Pork Employee Handbook. Because the employees at Dakota Cold Storage and D.C.S. Truck Service received employee handbooks that did not contain an "Emergency Notices" provision, they may not be included in the Count Two subclass. Plaintiff also seeks to certify a Count Three subclass of former employees of Dakota Pork Industries, Inc., Dakota Cold Storage, and D.C.S. Truck Service because only those former employees are eligible to assert a claim for unpaid wages under the South Dakota statute, § 60-11-7. Former employees at the American Foods headquarters in Green Bay may not claim the benefit of the South Dakota wage law.

Defendants argue that the complaint should not be amended to add these additional plaintiffs and defendants and the Court should not certify the proposed plaintiff class and subclasses because the WARN Act does not apply to layoffs at locations other than the Dakota Pork plant. Defendants argue that the Dakota Pork plant was the only "single site of employment" under 29 U.S.C. § 2101(a)(2) to trigger WARN Act protection, citing Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277 (8th Cir. 1996); Williams v. Phillips Petroleum Co., 23 F.3d 930 (5th Cir. 1994); and Carpenters Dist. Council of New Orleans v. Dillard Dept. Stores, Inc., 15 F.3d 1275 (5th Cir. 1994). Defendants argue that any plaintiff class certified should be limited to the Dakota Pork plant employees.

Applying the plain language of the statutes, the Court agrees with plaintiff that the determination of what constitutes "a single site of employment" is pertinent only to calculating whether a sufficient number of employees suffered an employment loss to

6

satisfy the definition of a "plant closing" for purposes of triggering WARN Act protection. See 29 U.S.C. § 2101(a)(2) (defining "plant closing" as "the permanent . . . shutdown of a single site of employment . . . if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding part-time employees"). The same statute, § 2101(a)(5), defines "affected employees" as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing . . . by their employer[.]" The applicable regulation states that the term "affected employees" includes "individually identifiable employees who will likely lose their jobs because of bumping rights or other factors, to the extent that such individual workers reasonably can be identified at the time notice is required to be given." 20 C.F.R. § 639.3(e) (1997). The employees at Dakota Cold Storage, D.C.S. Truck Service, and American Foods headquarters lost their employment as a direct consequence of the Dakota Pork plant closing and they were identifiable at the time notice was required to be given because the affidavits and exhibits submitted to this Court establish the employees were told on August 1 or August 13, 1997, that their jobs were terminated because of the Dakota Pork plant closing on August 1, 1997. The Court concludes that, once a "plant closing" occurs, as it undoubtedly did at the Dakota Pork plant when 850 employees lost their jobs, all "affected employees" are entitled to WARN Act notice.

In Rifkin, 78 F.3d at 1281-83, the Eighth Circuit held only that laid-off employees at geographically different McDonnell-Douglas sites in St. Louis County and St. Charles County, Missouri, could not be aggregated to satisfy the definition of a "mass layoff" under 29 U.S.C. § 2101(a(3)(B)(ii), that is, the loss of employment at a "single site of employment" during any thirty-day period for at least 500 employees, excluding part-time employees. Rifkin is distinguishable from the case before this Court, where the Dakota Pork plant closing alone affected more than 50 employees

7

at that single site of employment, and satisified the definition of a "plant closing."

In Williams, 23 F.3d at 934, Phillips Petroleum laid off more than 500 employees at its Bartlesville, Oklahoma, plant in 1992 after giving the sixty-day WARN Act notice, and other company divisions laid off smaller numbers of employees during 1991 and 1992 at plants in Bartlesville, Houston, Texas, and Washington, D.C. Some of those employees received WARN Act notice and some did not. The Fifth Circuit determined that the plants in Bartlesville and Houston were separate single sites of employment because of the geographic distance between them and that the Houston layoffs could not be aggregated with the Bartlesville mass layoff to require WARN Act notice for the fewer number of Houston employees who lost their employment. The appeals court observed that the Houston plaintiffs did not allege that they lost their employment because of bumping rights exercised by the Bartlesville employees to trigger a WARN Act event in Houston. Id. at 935. This Court can find no indication in the Williams opinion that the Houston layoffs were a direct consequence of the Bartlesville layoffs, bringing the Houston employees within the definition of "affected employees." Therefore, the Court believes Williams is also distinguishable from this case because plaintiff does allege, and the affidavits bear out, that the employees at Dakota Cold Storage, D.C.S. Truck Service, and American Foods headquarters lost their employment as a direct consequence of the Dakota Pork plant closing, and thus, they qualify as "affected employees."

Even if, as defendants argue, Williams stands for the rule that each separate location where employees are terminated by different company divisions must constitute a "single site of employment" to trigger WARN Act notice, a reading of the case with which this Court does not agree, the Court is not bound to follow Williams in any event because it is not Eighth Circuit precedent. The Eighth Circuit cited Williams in the Rifkin case only for the

proposition that geographically separated operations are not to be combined when determining whether the employment threshold for triggering the notice requirement is met. Rifkin, 78 F.3d at 1281. This Court agrees with the Eighth Circuit's citation of Williams for that proposition, but disagrees with defendants' more expansive reading of Williams.

Although the plaintiff does not raise the issue, the Court concludes that there is another reason why the employees terminated at Dakota Cold Storage, D.C.S. Truck Service, and American Foods headquarters should be permitted to proceed as plaintiffs in this case. Title 29 U.S.C. § 2104(a)(1) states that "[a]ny employer who orders a plant closing . . . in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing[.]" The same statute states in subsection (a)(7) that, "[f]or purposes of this subsection, the term, "aggrieved employee" means an employee who has worked for the employer ordering the plant closing . . . and who, as a result of the failure by the employer to comply with section 2102 of this title did not receive timely notice either directly or through his or her representative as required by section 2102 of this title." The defendants do not dispute that the terminated employees at Dakota Cold Storage, D.C.S. Truck Service, and American Foods headquarters worked for the same employer as the terminated employees at the Dakota Pork plant: American Foods Group, Inc. The Court concludes that these employees should be included in the plaintiff class because they are "aggrieved employees" within the meaning of the statutory definition of that term. See North Star Steel, 115 S.Ct. at 1929 ("The class of plaintiffs includes aggrieved employees . . . who may collect 'back pay for each day of violation[.]'").

A WARN Act case is particularly amenable to class certification. Finnan v. L.F. Rothschild & Co., 726 F.Supp. 460, 465 (S.D.N.Y. 1989). The Court finds on the record presented that

9

the proposed class plaintiffs satisfy the four requirements for certification of a class action set forth in Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequate representation. See DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174-75 (8th Cir. 1995). Eight hundred fifty employees lost their jobs at the Dakota Pork plant when it closed on August 1, 1997. More than fifty other employees lost their jobs at Dakota Cold Storage, D.C.S. Truck Service, and American Foods headquarters as a direct result. This satisfies the requirement that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Clearly, there are questions of law or fact common to the members of the class. See Rule 23(a)(2); DeBoer, 64 F.3d at 1174 (Rule 23 satisfied when the legal question linking the class members is substantially related to resolution of the litigation). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer, 64 F.3d at 1174. Having carefully reviewed the affidavits of plaintiffs Lora Kirkvold, Roger Barnes, Larry Ernster, and Joan Alsteen, the Court is satisfied that these plaintiffs bring forward claims typical of the class and will adequately represent the class interests. The Court is also satisfied that plaintiffs' class counsel possess the requisite skill, ability, and resources to provide proper legal representation to the plaintiff classes. Therefore, subsections (3) and (4) of Rule 23(a) are also met.

The Court finds that the plaintiff class, as well as the Count Two subclass and the Count Three subclass, will be certified under Federal Rule of Civil Procedure 23(b)(3). The Court finds that the questions of law or fact common to the members of the plaintiff class and subclasses predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In making this determination, the Court has considered the interest of members of the class in individually

controlling the prosecution or defense of separate actions and has determined that a class action will result in the orderly and efficient administration of the class members' claims. The Court is unaware of any other litigation concerning the controversy that already has been commenced by the members of the class. The Court finds that it is desirable to concentrate the litigation of these claims in the District of South Dakota, Southern Division, the federal district within which the Dakota Pork plant is located. Finally, the Court has considered the difficulties likely to be encountered in the management of a class action, and finds that such an approach is preferable to the individual litigation of claims. See Fed.R.Civ.P. 23(b)(3). Accordingly,

IT IS ORDERED:

(1) that plaintiff's Motion to Amend Complaint is granted for the reasons stated. (Doc. 12.)

(2) that plaintiff's Motion to Maintain Class Action and For Certification of a Class and Two Subclasses is granted. (Doc. 14.)

(3) that this action shall be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).

(4) that the following plaintiff class and two plaintiff subclasses are certified under Rule 23(b)(3) for purposes of this lawsuit:

### CLASS

All former employees of Dakota Pork Industries, Inc., Dakota Cold Storage Company, D.C.S. Truck Service, and American Foods Group, Inc., who were involuntarily terminated from employment as a result of the closing of Dakota Pork Industries, Inc.'s plant in Huron, South Dakota, and who did not receive sixty days written notice of said termination.

### COUNT TWO SUBCLASS

All former employees of Dakota Pork Industries, Inc., who were involuntarily terminated from employment as a result of the closing of Dakota Pork Industries, Inc.'s plant in Huron, South Dakota, and who did not receive sixty days written notice of said termination.

## COUNT THREE SUBCLASS

All former employees of Dakota Pork Industries, Inc., Dakota Cold Storage Company, and D.C.S. Truck Service, Inc., who were involuntarily terminated from employment as a result of the closing of Dakota Pork Industries, Inc.'s plant in Huron, South Dakota, and who did not receive sixty days written notice of said termination.

(5) that defendants' counsel is directed to provide to plaintiffs' class counsel within fourteen days after receipt of this Memorandum Opinion and Order a computer readable list of former employees of Dakota Pork Industries, Inc., Dakota Cold Storage Company, D.C.S. Truck Service, and American Foods Group, Inc., who were involuntarily terminated from employment as a result of the closing of Dakota Pork Industries, Inc.'s plant in Huron, South Dakota; this list shall include name, last known address, Social Security number, date of birth, and telephone number.

(6) that plaintiffs' class counsel is directed to provide the best notice practicable to all class members using the form of the Notice of Class Action submitted to the Court; this process shall commence with submission to the Court for approval, within fourteen days of receipt of this Memorandum Opinion and Order, a plan and schedule for providing such notice, as well as the final draft of the Notice of Class Action.

(7) that the caption of this class-action case is amended as shown on this Memorandum Opinion and Order.

Dated this 15th day of December, 1997.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Shelley Hmk*
(SEAL) DEPUTY